IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

ROSEMARY NEWSOME,       )
                            )
      Plaintiff,          )
                            )
    v.                     )     CASE NO. 3:02-cv-500-MEF
                            )           (WO)
LEE COUNTY, ALABAMA, *et al.*,  )       [PUBLISH]
                            )
      Defendants.     )

## MEMORANDUM OPINION AND ORDER

Plaintiff Rosemary Newsome ("Newsome") brings this action against Defendants Lee County, Alabama, *et al.*,[1] alleging violations of a multitude of rights under the United States Constitution and the laws of Alabama. Newsome complains that a sheriff's deputy intentionally subjected her to a series of sexual assaults by male inmates while she was a pretrial detainee at the Lee County Jail. She also alleges that the officers at the jail subsequently conspired to prevent her from reporting the rapes and retaliated against her for her attempts to seek a legal remedy. Another part of Newsome's complaint contends that Lee County provided inadequate physical facilities and monitoring equipment at the jail to prevent the attacks from occurring. This cause is presently before the Court on the Motion

---

[1] There are effectively two sets of defendants before the Court. The first group, which will hereinafter be referred to as the "County Defendants," represents Lee County, the Lee County Commission, and the Lee County Commissioners in their official capacities. As part of their motion, the County Defendants have moved for the Court to strike the allegations against two of the three listed County Defendants because they are all the same entity and thus duplicative. As noted below, the Court agrees with the County Defendants and grants this portion of their motion. The second group, made up of the individual officers in this case, will be hereinafter referenced as the "Officer Defendants."

to Dismiss (Doc. #7) filed by the County Defendants on May 23, 2002 and the Motion to Dismiss (Doc. #12) filed by the Officer Defendants on June 6, 2002.  On November 30, 2005, the Court determined that supplemental briefing would be necessary to resolve some of the issues this case presents, and the parties responded accordingly.  After reviewing the submissions of the parties, the Court finds, for the reasons set forth below, that the motions are due to be GRANTED in part and DENIED in part.

**JURISDICTION AND VENUE**

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.  The parties do not contest personal jurisdiction or venue, and the Court finds adequate allegations in support of both.

**STANDARD OF REVIEW**

A Rule 12(b)(6) motion tests the *legal* sufficiency of the complaint.  A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations.  *See Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984); *see also Chepstow Ltd. v. Hunt*, 381 F.3d 1077, 1080 (11th Cir. 2004) ("A motion to dismiss may be granted only when the defendant demonstrates beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.") (internal quotations omitted).  In other words, a motion to dismiss only requires a court to determine whether a plaintiff's allegations, if proven, are sufficient to state a recognized claim at law upon which relief can be granted.  In analyzing a motion to dismiss,

2

the court will accept as true all well-pleaded factual allegations and view them in a light most favorable to the non-moving party.  *See Hishon,* 467 U.S. at 73.

## FACTS AND PROCEDURAL HISTORY

The Court has carefully considered all documents submitted in support of and in opposition to the motion.  The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following facts.

Newsome, an African-American woman, was arrested and taken into pretrial custody at the Lee County Jail on April 30, 2000.  She was approximately two months pregnant, and this was the first time she had been incarcerated.  On May 7, 2000, sheriff's deputy Rodney Tabb ("Tabb") came to Newsome's cell and ordered her to come with him so that she could do something for him.  Tabb escorted Newsome to the side of the facility where the male inmates were housed and forced Newsome into a cell in which three male inmates were waiting.  Tabb then distributed condoms to the inmates and instructed Newsome not to say anything or make any noise.

In the cell, one of the inmates asked Newsome to perform oral sex on him, and when she refused, the prisoners pushed her to the floor.  Although Newsome protested this treatment and pleaded with them that she was pregnant, the inmates took turns raping Newsome.  During the gang rape, Tabb stood by watching the violent conduct and did nothing to stop it, even allowing other prisoners to view the episode.  After the third inmate raped Newsome, the inmates urinated on her, and Tabb then removed her from the cell.  As

he walked Newsome back to the female side of the facility, Tabb threatened to keep her incarcerated for an indefinite period of time if she revealed these events to anyone.  Tabb informed her that he knew people who could ensure that she would remain in jail indefinitely, unable to see her family, if she violated his orders.

Later that night, Newsome began having severe cramps and feared the trauma of the sexual assault may have harmed her unborn child.  She immediately attempted to contact the jail's medical services staff but received no assistance.  Over the course of the next few days, her symptoms persisted, and she complained to several jail employees of severe cramps, discharge, and spotting but was given only Tylenol.  Finally, on May 11, 2000, Newsome was allowed to go to the emergency room at East Alabama Medical Center.

At the hospital, Newsome reported the details of the rapes to the emergency room doctor and relayed her fears that another similar incident could occur.  The doctor contacted Major Cary Torbert ("Torbert") at the Lee County Sheriff's Department and informed him of Newsome's statements.  Torbert assigned Officer Van Jackson ("Jackson") to investigate the allegations, and Jackson spoke with Newsome at the hospital later that day.  Jackson took Newsome's statement but also asserted that she would have to return to the Lee County Jail. Newsome vigorously resisted being returned to the jail, and several members of the hospital staff intervened on her behalf.  Eventually, it was agreed that Newsome would be transferred to the Auburn City Jail.  At her new location, she was not mistreated in any way and allowed to contact her family and speak with them about her experience at the Lee County Jail.

4

However, Torbert demanded Newsome's return the next day, and she was subsequently transferred back to the Lee County Jail.

Once Newsome was back at the jail, she learned that Jackson had completed his investigation in less than twenty-four hours and had not contacted several of the women who were in the cell with Newsome that night. In fact, Newsome alleges that Jackson threatened her and told her that because she had reported the incident, "they" were going to negatively influence her August court hearing. Newsome additionally avers that numerous other officers punished, intimidated, and retaliated against her for speaking out and sought to prevent her from notifying anyone outside of the jail about the rapes. As part of this effort, Officers William Wiltsie ("Wiltsie") and Minnie Ausby ("Ausby") allegedly violated the jail's policy and procedure by refusing to allow Newsome to make phone calls and by denying her visitation when her family and three children attempted to see her.

Throughout this time, Newsome continued to suffer the maladies arising out of the May 7 sexual assault. Initially, she had a difficult time obtaining her prescription medication because Officer Betty Seabrook ("Seabrook"), who was apparently the jail's nurse, refused to converse with her, saying Newsome had talked enough already. When Seabrook did relent, she threw Newsome's medicine at her and joked that she would need to wash her hands after coming into contact with Newsome. This type of treatment continued until May 17, 2000 when a judge ordered Newsome's release.

Newsome alleges that while she was in custody a female officer encouraged her to

proceed with her complaint. This officer purportedly told Newsome that other officers had been speaking derisively about her and that this was not the first time such a thing had happened at the jail. Newsome also contends that the Defendants have interfered with her attempts to pursue a criminal complaint and that other officers have called her a liar and stated charges would be brought against her for her lies. As a result of the purported assault, Newsome suffered severe emotional and physical injuries that have required extensive treatment.

On April 26, 2001, Newsome filed a notice of claim and sworn statement with the Lee County Defendants to advise them of her contentions.[2] Then, on August 9, 2001, Newsome sought pre-action discovery pursuant to Alabama Rule of Civil Procedure 27 in order to obtain evidence relating to the physical condition of the jail, the financial and supervisory relationship between the Lee County Defendants and the Lee County Jail, and any prior known complaints of sexual abuse at the jail. A hearing was held on Newsome's petition in Lee County Circuit Court on October 18, 2001. At the hearing, the County Defendants argued that Newsome already had sufficient evidence to frame a complaint, and thus pre-action discovery was unnecessary. The court apparently agreed with this assessment and denied Newsome's petition.

On May 2, 2002, Newsome filed the present action in this Court pursuant to 42 U.S.C. § 1983 against the Lee County and Officer Defendants. In her complaint, Newsome claims

---

[2] This action was in accordance with Ala. Code §§ 11-47-23 and 11-47-192, which require notice be provided to a municipality before suit is brought against it.

violations of the United States Constitution including rights guaranteed by the First Amendment, the Fourth Amendment, the Fifth Amendment, the Thirteenth Amendment, and the Fourteenth Amendment.  Additionally, Newsome alleges pursuant to 42 U.S.C. §§ 1983 and 1985 that the Defendants took part in a conspiracy to violate her rights.  Newsome also asserts numerous violations of her rights under state law.

## DISCUSSION

### A. Federal Claims

Newsome has brought several claims based on federal law against the Defendants. Because of the differences in how suits brought against each type of defendant are treated, the Court will address each category of defendants in turn.

1. *Officer Defendants in their Official Capacity*

A suit against a government official in his or her official capacity is considered a suit against the official's office itself.  *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).  When that office is an arm of the state government, the Eleventh Amendment "protects the sovereignty of the state by prohibiting suits when recovery would be paid from state funds."[3] *Robinson v. Georgia Dep't of Transp.*, 966 F.2d 637, 638-39 (11th Cir. 1992); *see also Edelman v. Jordan*, 415 U.S. 651 (1976) (defining the scope of sovereign immunity under the Eleventh Amendment).

In Alabama, the "authority the Sheriff has over the jail is totally independent of the

---

[3] There is no indication that Alabama has waived its sovereign immunity.

7

county commission" such that "the sheriff acts exclusively for the state rather than the county in operating a county jail." *Marsh v. Butler County, Alabama*, 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc) (citation and internal quotations omitted). Therefore, "Alabama sheriffs are considered arms of the state and protected by sovereign immunity in suits against them in their official capacity." *Id*. at 1027; *see McMillan v. Monroe County, Alabama*, 520 U.S. 781, 793 (1997) (finding Alabama sheriffs are arms of the state when engaging in law enforcement activity). This immunity also extends to the sheriff's deputies, *Carr v. City of Florence, Alabama*, 916 F.2d 1521, 1526 (11th Cir. 1990), and to county jailers. *Lancaster v. Monroe County, Alabama*, 116 F.3d 1419, 1429 (11th Cir. 1997).

Because Alabama sheriffs, their deputies, and county jailers are considered representatives of the state government in their operation of county jails, the Officer Defendants are immune from suit in their official capacities, and these claims must be dismissed.

2. *Officer Defendants in their Individual Capacities*

While the Eleventh Amendment shields state officers from damage suits in their official capacities, these officials are individually subject to liability under 42 U.S.C. § 1983 for violations of the United States Constitution and federal law. *See Graham*, 473 U.S. at 165-67. However, a government official sued in his or her individual capacity under § 1983 may assert qualified immunity as an affirmative defense if he or she was performing a discretionary function. *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004).

"Once the official has established that he was engaged in a discretionary function, the plaintiff bears the burden of demonstrating that the official is not entitled to qualified immunity." *Id*. If the plaintiff fails to furnish sufficient factual allegations at this stage, the defendant officer is entitled to judgment as a matter of law. *See Marsh*, 268 F.3d at 1022.

In *Saucier v. Katz*, 533 U.S. 194, 201 (2001), the Supreme Court delineated a two-step analysis for determining whether an officer is eligible for qualified immunity. The initial inquiry focuses on whether the plaintiff's allegations, if considered true, show that the officer violated a constitutional right. *Id*. The absence of a constitutional transgression ends the inquiry. *Id*. Where a court does find that an officer acted in an unconstitutional manner, the analysis turns to whether the right in question was clearly established so that the officer had fair warning that his or her conduct was constitutionally prohibited. *Id*.

"For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citation and internal quotations omitted). This standard does not require a prior court decision to have declared the precise set of facts presently alleged unlawful, "but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 438 U.S. 635, 640 (1987). "The salient question . . . is whether the state of the law . . . gave [the officers] fair warning that their alleged treatment of [the plaintiff] was unconstitutional." *Hope*, 536 U.S. at 741.

The Eleventh Circuit has further refined the analysis of when the law is clearly

established.  It has observed that "fair and clear" notice may be given by (1) the "obvious clarity" of the pertinent federal statute or constitutional provision, such that qualified immunity may be overcome in the "total absence of case law," (2) the judicial determination that certain conduct has been defined as unlawful without regard to particular facts, and (3) holdings in specific cases that are tied to certain facts.  *Vinyard v. Wilson*, 311 F.3d 1340, 1350-51(11th Cir. 2002) (emphasis removed).  The decisions of the Supreme Court, the Eleventh Circuit, and the highest court in the state in which the case arose provide the case law capable of clearly establishing the boundaries of rights in the qualified immunity analysis.  *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 953 (11th Cir. 2003).

Here, Newsome alleges numerous constitutional violations stemming from the purported rape.  The Court must determine if these allegations, if taken as true, substantiate any constitutional violations and, if so, whether the applicable law was clearly established at the time of their occurrence.

a. First Amendment

Newsome asserts that her First Amendment rights were violated when the Officer Defendants intentionally denied her the opportunity to speak and receive information while in the jail.  Her complaint also alleges that the Defendants violated these rights by threatening and punishing her for making her rape complaint.

The First Amendment rights of pretrial detainees are at least as extensive as the

constitutional rights afforded convicted prisoners.[4]  *See Bell v. Wolfish*, 441 U.S. 520, 545-46 (1979).  Among the rights protected by the First Amendment are the right to petition the government for redress of injuries and the right to access the courts.  Indeed, the Supreme Court has described the right to petition as "among the most precious liberties safeguarded by the Bill of Rights," *United Mine Workers v. Illinois State Bar Ass'n*, 389 U.S. 217, 222 (1967), and has stated that the right to access the courts does not expire upon admission to prison.  *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Jackson v. State Bd. of Pardons and Paroles*, 331 F.3d 790, 797 (11th Cir. 2003).  Although the rights of inmates and pretrial detainees are often limited by institutional necessity, these rights cannot be obstructed by retaliatory tactics.  *See Wolfish*, 441 U.S. at 545-46; *Thomas v. Evans*, 880 F.2d 1235, 1242 (11th Cir. 1989); *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988).  A prisoner states a First Amendment violation when it is shown that jail officials penalized the inmate for the exercise of free speech rights.  *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997).  The retaliatory actions need not rise to the level of independent constitutional violations; it is sufficient that they were adverse and taken in retribution for the exercise of First Amendment freedoms.  *Thomas*, 880 F.2d at 1242.

Newsome alleges that she was subjected to a combination of retaliatory threats and punishments by the Officer Defendants after making her rape complaint.  Specifically, Newsome states that Officer Tabb threatened her immediately after the sexual assault and

---

[4] Because of this recognition, the Court will utilize cases involving both convicted prisoners and pretrial detainees in making its determination of whether a constitutional infringement occurred.

that Officers Ausby and Wiltsie handled her differently from other inmates by preventing her from using the phone or having visitors.  Additionally, Officer Seabrook directed derogatory remarks toward Newsome and treated her poorly because "she had already talked too much." Officer Jackson made similar threatening comments to Newsome and stated that "they" were going to negatively influence her court hearing because of her complaint.  Newsome also contends that Major Torbert was influenced by retaliatory motives when he required her to return to the jail despite her expressed safety concerns.

Each of these actions states a violation of the First Amendment in some form. Jackson, Seabrook, and Torbert penalized and retaliated against Newsome for attempting to access the legal system in making her rape complaint.  *See Mitchell*, 112 F.3d at 1490.  Tabb is likewise implicated in this regard because he threatened Newsome harm should she so act. Lastly, Ausby and Wiltsie violated Newsome's rights by conduct that could be characterized as either retaliatory or an effort to block her access to the courts and other outlets of communication.  *See Thomas*, 880 F.2d at 1241-42.

These acts are in obvious contravention of the First Amendment, and the existing law at the time of the officers' acts clearly established their unlawful nature both generally and specifically.  *See Mitchell*, 112 F.3d at 1490.  Generally, the precedent of the Supreme Court and Eleventh Circuit at the time of this incident left no doubt that actions such as those taken by the Officer Defendants violated the First Amendment.  As far back as *Pell v. Procunier*, 417 U.S. 817, 822 (1974), the Supreme Court has recognized that pretrial detainees retain

their First Amendment rights subject only to limitation by the legitimate penal interests of the institution.  The Court of Appeals has correspondingly pronounced an explicit general prohibition on retaliation against prisoners who exercise their First Amendment rights.  *See e.g.*, *Mitchell*, 112 F.3d at 1490; *Thomas*, 880 F.2d at 1241-42; *Wright v. Newsome*, 795 F.2d 964, 968 (11th Cir. 1986); *Bridges v. Russell*, 757 F.2d 1155 (11th Cir. 1985).  This body of case law is sufficient to clearly establish and provide fair warning as to the general unlawfulness of the Officer Defendants' actions in this case.  *See Vinyard*, 311 F.3d at 1350-51 (discussing unlawfulness without regard to specific facts).

The Eleventh Circuit has also forbidden the conduct at issue here in particularity.  For instance, in *Bridges*, the court reversed a grant of summary judgment where an inmate contended that his transfer to another facility was prompted by prison officials' intent to retaliate against him because of grievances he had filed.  757 F.2d at 1155.  A holding by the Eleventh Circuit "that a particular set of facts raises a question of material fact sufficient to preclude summary judgment serves as fair warning to officials."  *Akins v. Fulton County, Georgia*, 420 F.3d 1293, 1305 (11th Cir. 2005).  The actions of Torbert in this case are sufficiently comparable to the "fact-specific" nature of the findings in *Bridges* to negate any possibility that a reasonable officer could find the respective circumstances "fairly distinguishable."  *Vinyard*, 311 F.3d at 1351-52.  Thus, Newsome has made a sufficient demonstration of constitutional violations to survive the motion to dismiss as to Major Torbert and Officers Ausby, Jackson, Seabrook, Tabb, and Wiltsie.

Nonetheless, in light of the Eleventh Circuit's heightened pleading standard, § 1983 claims against officers asserting qualified immunity can only be maintained if a sufficient level of specificity is present in the complaint.  *See Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003).  Therefore, the First Amendment claims against Sheriff Jay Jones must be dismissed because Newsome has not made an adequate description of any action that he took that violated the First Amendment.

### b. Fourth Amendment

Newsome has also alleged that the Officer Defendants engaged in an unreasonable seizure and application of force violative of her rights under the Fourth Amendment. Typically, courts address claims of pretrial detainee mistreatment under the Fourteenth Amendment, whereas the abuse of individuals during the process of arrest implicates the Fourth Amendment.  *See Hicks v. Moore*, 422 F.3d 1246, 1254 n.7 (11th Cir. 2005).  While pretrial detainees and convicted prisoners do retain certain limited rights under the Fourth Amendment, *see Wolfish*, 441 U.S. at 559-60, those rights are not the rights infringed by allegations such as those made by Newsome.  The averments of "unreasonable and unlawful seizure and application of force" are properly addressed under the punishment analysis based on the Fourteenth Amendment because Newsome was already in custody at the time.  *See Bozeman v. Orum*, 422 F.3d 1265, 1271 (11th Cir. 2005).  As a result, Newsome's claims under the Fourth Amendment are dismissed as to all Officer Defendants.

### c. Thirteenth Amendment

14

Next, Newsome advances a claim of constitutional deprivation under the Thirteenth Amendment. Newsome contends that Tabb, in collaboration with the three inmates, sexually enslaved her during the course of the rape. This appears to be a novel theory, and Newsome has not cited any decisional authority that would lead the Court to believe otherwise. As mentioned above, the Fourteenth Amendment provides the applicable constitutional standard for the treatment of pretrial detainees, and the Court has not been provided with adequate reason to deviate from that approach here. Therefore, Newsome's claims under the Thirteenth Amendment are dismissed as to all Officer Defendants.

### d. Fifth and Fourteenth Amendments

Violations of the Fifth and Fourteenth Amendments are the last of Newsome's allegations of constitutional deprivation under § 1983. Newsome avers that her substantive and procedural due process rights as a pretrial detainee, including the right to be free from cruel and unusual punishment during detention and the right not to be subjected to punishment without a hearing, were transgressed by the Officer Defendants' use of physical force without a legitimate governmental purpose. Newsome also asserts that the Defendants' actions were motivated by invidious gender animosity and as such breached her right to equal protection.

At the outset, the Court recognizes that Newsome's due process claims are properly asserted under the Fourteenth Amendment because they are brought against state officials. The Due Process Clause of the Fourteenth Amendment supplies the applicable legal

standards for claims involving state or local mistreatment of pretrial detainees, *see Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996), whereas the Fifth Amendment's Due Process Clause applies only to the federal government. *See Bartkus v. Illinois*, 359 U.S. 121 (1959). Thus, to the extent the complaint makes allegations under the Fifth Amendment, those claims must be dismissed. However, the Court's dismissal of Newsome's claims under the Fifth Amendment does not affect her Fourteenth Amendment claims.

The due process guarantee secured by the Fourteenth Amendment proscribes the punishment of a pretrial detainee before a proper adjudication of guilt. *Wolfish*, 441 U.S. at 535. Institutional necessity requires that the use of physical coercion on a detainee be "deemed legitimate in a custodial setting as long as it is applied in a good faith effort to maintain or restore discipline and not maliciously and sadistically to cause harm." *Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002). Thus, only a use of force that "is physically barbarous [or] involv[es] . . . the unnecessary and wanton infliction of pain or the imposition of pain totally without penalogical [sic] justification" violates this protection.[5] *Evans v. Dugger*, 908 F.2d 801, 803 (11th Cir. 1990). Courts often consider a variety of

---

[5] The Eighth Amendment "serves as the primary source of substantive protection to convicted prisoners in cases . . . where the deliberate use of force [by prison officials] is challenged as excessive and unjustified." *Whitley v. Albers*, 475 U.S. 312, 327 (1986). Although the Due Process Clause of the Fourteenth Amendment is the source of this protection for pretrial detainees, the decisional law is the same under both standards and cases involving each are used interchangeably. *See, e.g.*, *Cottrell*, 85 F.3d at 1490; *Hamm v. DeKalb County*, 774 F.2d 1567, 1573-74 (11th Cir. 1985) ("Certainly states may not impose on pretrial detainees conditions that would violate a convicted prisoner's [E]ighth [A]mendment rights."); *Goodson v. City of Atlanta*, 763 F.2d 1381, 1386 (11th Cir. 1985) (finding violation of pretrial detainee's right to due process where the detainee was subjected to cruel and unusual punishment as prohibited by the Eighth Amendment).

factors in gauging the legitimacy of the use of physical coercion in a given situation including "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Skrtich*, 280 F.3d at 1300 (quoting *Hudson v. McMillian*, 503 U.S. 1, 7-8 (1992)).  However, such an analysis may be unnecessary where an officer applies force without any penological basis whatsoever. *Rhodes v. Chapman*, 452 U.S. 337, 345 (1981) ("Among 'unnecessary and wanton' inflictions of pain are those that are 'totally without any penological justification.'") (quoting *Gregg v. Georgia*, 428 U.S. 153, 181 (1976)).

To establish a claim in this regard, the plaintiff must show (1) that the defendants acted with a malicious and sadistic purpose to inflict harm and (2) that more than a de minimis injury resulted.  *Johnson v. Breeden*, 280 F.3d 1308, 1321 (11th Cir. 2002).  Once these elements have been satisfactorily demonstrated, "there is simply no room for a qualified immunity defense" because "the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution." *Skrtich*, 280 F.3d at 1301.  "The only question, then, is whether the plaintiff has alleged facts sufficient to survive a motion to dismiss or a motion for summary judgment." *Id*.

Newsome's allegations in this case describe a course of conduct on the part of Officer Tabb that is clearly malicious and sadistic without any penological purpose.  It is a matter of "obvious clarity" that the intentional subjection of a pretrial detainee to repeated sexual

assaults amounts to an unnecessary and wanton infliction of pain in contravention of the Due Process Clause of the Fourteenth Amendment. Indeed, the balancing of the *Hudson* factors is impossible to perform under these facts as there is no possible justification for such acts. Therefore, Newsome's claims against Tabb for excessive force that amounts to cruel and unusual punishment of a pretrial detainee under the Fourteenth Amendment must be sustained.

Nevertheless, to the extent Newsome makes allegations against the other Officer Defendants under the Fourteenth Amendment, these claims must be dismissed because she has failed to show how any of these individuals were either complicit in the sexual assault or deliberately indifferent to its occurrence. Such a showing is essential if Newsome is to implicate any of Tabb's supervisors or fellow officers. With regard to the supervisors, "[i]t is axiomatic, in section 1983 actions, that liability must be based on something more than respondeat superior." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) (quoting *H.C. by Hewett v. Jarrard*, 786 F.2d 1080, 1086 (11th Cir. 1986)). Newsome's vague and conclusory allegations are not sufficient to demonstrate any violation on the part of the other officers or to establish a causal connection between Tabb's supervisors and the sexual assault. Therefore, Newsome's due process claim can only be sustained against Tabb.

Newsome has also posited that the Officer Defendants' treatment of her was motivated by an invidious gender animosity in violation of the Fourteenth Amendment's Equal Protection Clause. This provision protects prisoners from the unlawfully

18

discriminatory actions of state government officials.  *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995).  Individuals who are incarcerated have a constitutional right to be free from gender discrimination on the part of jail personnel.  *See id.*; *see also J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 130-31 (1994) ("Intentional discrimination on the basis of gender by state actors violates the Equal Protection Clause.").  Where a prisoner relies on circumstantial evidence "[t]o establish an equal protection claim, [the plaintiff] must demonstrate that (1) he is similarly situated with other prisoners who received more favorable treatment, and (2) his discriminatory treatment was based on some constitutionally protected interest."  *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001) (quoting *Damiano v. Florida Parole & Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)) (internal quotations omitted).  While it is necessary that the plaintiff make a showing of discriminatory intent, this question is one of fact, and minimal "[d]irect evidence of an illegal motive will usually suffice to create a genuine issue of fact and preclude summary judgment."  *Harris*, 65 F.3d at 917 (citing *Swint v. City of Wadley, Alabama*, 51 F.3d 988 (11th Cir. 1995)).

In this case, Newsome has not produced any direct evidence of a discriminatory motive or directed the Court's attention to any relevant similarly situated male inmates. Instead, Newsome has argued that a simple assertion of invidious gender animosity and discrimination on the part of the Defendants is sufficient to establish a cognizable claim. Newsome's equal protection claim fails in this regard because it assumes the point in question.  The Eleventh Circuit has made clear that the preliminary step in the equal

19

protection analysis is the designation of similarly situated comparators.  *See Rodriguez v. Lamer*, 60 F.3d 745, 749 (11th Cir. 1995); *Smart v. Shalala*, 9 F.3d 921, 924 (11th Cir. 1993); *Price v. Tanner*, 855 F.2d 820, 822 (11th Cir. 1988); *Johnson v. Smith*, 696 F.2d 1334, 1336 (11th Cir. 1983).   The Equal Protection Clause essentially requires that all "similarly situated persons . . . be treated alike."  *City of Cleburne, Texas v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  Hence, a court must be able to discern whether a defendant's treatment of an individual violates this command.  The use of similarly situated comparators enables a court to ascertain whether the plaintiff has experienced simply a disparate impact or whether governmental action is motivated by an unlawfully discriminatory intent.  *See Price*, 855 F.2d at 822; *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977).  Only the latter is actionable, and this factor ensures the effectiveness of this limitation. *See Price*, 855 F.2d at 822; *Washington v. Davis*, 426 U.S. 229, 242 (1976) ("Disproportionate impact is not irrelevant, but it is not the sole touchstone of an invidious discrimination.").   Newsome's allegations here do not provide the necessary comparators to furnish discriminatory intent in the absence of direct evidence of gender animosity and consequently cannot survive the Defendants' motion.

This result is consistent with one of the few precedents to address a comparable factual circumstance.  *See Barney v. Pulsipher*, 143 F.3d 1299, 1312-13 (10th Cir. 1998). In *Barney*, the Tenth Circuit upheld the dismissal of an equal protection claim based on a prison guard's sexual assault of two female inmates because the plaintiffs did not establish

relevant male comparators.   The court refused to accept the plaintiffs' argument that instances of sexual harassment or abuse provide an exception from the showing of similarly situated male inmates.[6]  Newsome has taken a comparable position here by relying on sexual harassment cases in the employment setting in an effort to circumvent this requirement.  As the *Barney* court recognized, these cases are plainly inapposite to the equal protection analysis because the causes of action in the employment context find their foundation in Title VII not the Fourteenth Amendment.  Therefore, Newsome's equal protection claims must be dismissed.

    e. Conspiracy

    In her next claim, Newsome has averred that the Officer Defendants conspired to transgress her constitutional rights and to deprive her of the ability to pursue a legal remedy in the aftermath of the sexual assault.  These allegations basically delineate what amounts to two separate conspiracies.  The first concerns the actions on the part of Tabb and the three inmates to sexually assault Newsome, and the second involves the subsequent cover-up.  Newsome argues that these contentions substantiate claims of conspiracy under both 42

_____

    [6] The Tenth Circuit also observed that "assault[s] of inmates by prison guards are more properly analyzed under the Eighth Amendment [or as in the case of pretrial detainees, the Fourteenth Amendment,]" and that the "Equal Protection Clause in the prison-conditions context is usually invoked to remedy disparities in educational, vocational, and recreational programs offered to male and female inmates."  *Barney*, 143 F.3d at 1312 n. 15.  While this may most often be the case, the Eleventh Circuit has not ruled out the potential applicability of the Equal Protection Clause where discriminatory intent is adequately established. *See Harris*, 65 F.3d at 916 (finding cognizable claim under the Fourteenth Amendment where racial animus was shown to motivate guard's mistreatment of an inmate).

U.S.C. §§ 1983 and 1985(3).

To establish a claim under § 1985(3), a plaintiff must show: "(1) a conspiracy; (2) for the purposes of depriving . . . any person or class of persons of the equal protection of the laws . . .; and (3) an act in furtherance of the conspiracy; (4) whereby a person is [injured] . . . or deprived of any right or privilege of a citizen of the United States." *Burrell v. Bd. of Trustees of Ga. Military Coll.*, 970 F.2d 785, 793-94 (11th Cir. 1992) (quoting *United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott*, 463 U.S. 825, 828-29 (1983)).  The key factor in this formulation is the second element, which specifically requires the plaintiff to show some "class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).  Although women are considered "a class of persons [protected] from sex-based conspiracies against them where the conspirators were acting under color of state law," *Lyes v. City of Riviera Beach, Florida*, 166 F.3d 1332, 1336-37 (11th Cir. 1999) (en banc), the "narrow intent requirement erects a significant hurdle for section 1985(3) plaintiffs." *Burrell*, 970 F.2d at 794.

As the Court discussed in its equal protection analysis, Newsome has not provided sufficient evidence to substantiate a discriminatory animus on the part of the Defendants. This flaw is fatal to the § 1985(3) claim as well because it requires the same proof of intent. *See id.*; *see also Valanzuela v. Snider*, 889 F. Supp. 1409, 1420 (D. Col. 1995) (dismissing the conspiracy claim of a woman sexually assaulted by police because of a lack of evidence on discriminatory intent).  Without this element, this claim must be dismissed.

22

A prima facie case of conspiracy under § 1983 requires (1) a violation of the plaintiff's federal rights and (2) an agreement among the defendants to violate those rights. *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990); *Strength v. Hubert*, 854 F.2d 421, 425 (11th Cir. 1988). To prove the existence of an agreement on the part of the defendants, a plaintiff need not produce a "smoking gun;" instead, "nothing more than an 'understanding' and 'willful participation' . . . is necessary to show the kind of joint action that will subject . . . parties to § 1983 liability." *Bendiburg*, 909 F.2d at 469.

The Court has determined that Newsome has alleged sufficient facts to overcome the Officer Defendants' assertion of qualified immunity on her First and Fourteenth Amendment claims. The Court must therefore examine whether Newsome's complaint describes an agreement between the Defendants to violate these specific rights.

Newsome's first claim of conspiracy centers on the sexual assault arranged by Tabb and carried out by the three male inmates. The Court has discerned a violation of the Fourteenth Amendment in these allegations. It is not necessary that all members of the conspiracy be governmental officials. The conspiracy cause of action under § 1983 reaches private conduct when it is carried out in concert with a state official to deprive an individual of federal rights. *See Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 941 (1987) ("Private persons, jointly engaged with state officials in the prohibited action, are acting under color of law for purposes of the statute.") (quoting *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970)) (internal quotations omitted). While "a conspiracy requires a meeting of the minds

23

between two or more persons," *see McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000) (en banc), there is no corresponding requirement that all parties to the conspiracy be brought before the court.  *See Ng Pui Yu v. United States*, 352 F.2d 626, 633 (9th Cir. 1965) ("It is not necessary, to sustain a conviction for a conspiracy, that co-conspirators be charged."); *see also United States v. Andrews*, 850 F.2d 1557, 1561 (11th Cir. 1988) (upholding inconsistent jury verdicts rendered in criminal conspiracy trial).

The facts of this case give every indication that Tabb and the inmates worked in concert to deprive Newsome of her rights.  Tabb led Newsome to the cell where the inmates were waiting and distributed condoms to them after forcing her into the cell.  Tabb then observed the sexual assault that took place without intervening.  These events evince a clear understanding or agreement between Tabb and the inmates and willful participation on their parts to violate Newsome's constitutional rights.  As a result, the Court must conclude that the assertions in Newsome's complaint are sufficient to sustain a claim of conspiracy under § 1983 against Tabb even though none of his co-conspirators are a part of this case.

Newsome has also alleged that the Officer Defendants conspired to infringe her First Amendment rights by retaliating against her for reporting the rape and by denying her access to the avenues through which she could pursue a legal remedy.  The Court's analysis above found that Newsome has overcome the Officer Defendants' defense of qualified immunity with respect to her First Amendment claim.  Newsome has also asserted sufficient allegations to "show some evidence of agreement between the defendants."  *Rowe v. City of Fort*

24

*Lauderdale*, 279 F.3d 1271, 1283-84 (11th Cir. 2002).  Officers Tabb and Jackson threatened Newsome that she would encounter negative legal repercussions if she reported the assault. Major Torbert and Officers Ausby and Wiltsie acted to limit Newsome's access and exposure to outlets of communication that reached beyond the jail.  And Officer Seabrook maligned Newsome and delayed the delivery of her medication in retaliation for Newsome's complaint. Newsome contends that these actions were taken pursuant to an agreement to violate her rights, and the Court finds adequate circumstantial evidence of coordination to support the reasonable inference that such an agreement did occur.  This assertion seems entirely plausible given the similarity of the threats made by Jackson and Tabb and the concerted nature of the effort to prevent Newsome from speaking with anyone outside of the jail.  This description is more than enough to show that the Officer Defendants acted in accord to suppress Newsome's ability to pursue a legal remedy and to retaliate against her for making her rape complaint.

The Officer Defendants have argued that even if Newsome has made out a prima facie case,  the intracorporate conspiracy doctrine bars her conspiracy claims.  According to the Defendants, all of the officers are employees of the Sheriff's Department of Lee County and are therefore unable to conspire among themselves as they are part of the same entity.  The Court has analyzed two separate conspiracies in this case.  The intracorporate conspiracy doctrine is clearly inapplicable to the first because it involved the three inmates.  However, the conspiracy to cover-up the sexual assault and to retaliate against Newsome concerned

only Lee County officers and is therefore potentially barred by this doctrine.

Under the intracorporate conspiracy doctrine, the actions "of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy. Simply put, under the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." *McAndrew*, 206 F.3d at 1036. This doctrine also extends to civil rights actions brought against governmental entities. *See Denney v. City of Albany*, 247 F.3d 1172, 1190 (11th Cir. 2001); *Dickerson v. Alachua County Comm'n*, 200 F.3d 761, 768-70 (11th Cir. 2000). The Eleventh Circuit has acknowledged several exceptions to the intracorporate conspiracy doctrine, one of which exempts criminal conduct from its coverage.[7] *McAndrew*, 206 F.3d at 1038. In *McAndrew*, the Court of Appeals addressed the applicability of the doctrine where the defendants had conspired to obstruct the plaintiff's federal grand jury testimony. The court performed an extensive analysis of the development

---

[7] Another exception to the intracorporate conspiracy doctrine exists when corporate employees act for their own personal purposes rather than those of their employer. *See H & B Equip. Co., Inc. v. Int'l Harvester Co.*, 577 F.2d 239, 244 (5th Cir. 1978); *see also Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (holding that decisions of the former Fifth Circuit rendered prior to October 1, 1981 are binding authority in the Eleventh Circuit). Thus, even assuming that the criminal conduct exception did not apply, the Defendants would be barred from asserting the intracorporate conspiracy doctrine because they were not acting on behalf of the Lee County Sheriff in conspiring to deprive Newsome of her rights. Indeed, the interests of the officers in suppressing Newsome's ability to pursue a remedy are precisely the type of "independent personal stake" that makes the intracorporate conspiracy doctrine inapplicable. *H & B Equip. Co.*, 577 F.2d at 244; *see also Buschi v. Kirven*, 775 F.2d 1240, 1252 (4th Cir. 1985) (noting that the doctrine is inapplicable where the corporate employees were dominated by personal motives or acting beyond their authority).

of the intracorporate conspiracy doctrine and concluded that it "was never intended nor used to shield conspiratorial conduct that was criminal in nature." *Id*. at 1041-42.

Newsome argues that although the Defendants are all part of the same entity, the criminal conduct exception applies because the Defendants purportedly violated several provisions of Alabama law in their cover-up of the sexual assault. This position requires the Court to resolve what appears to be an issue of initial impression in this Circuit. Both *McAndrew* and *Kirwin v. Price Commc'n Corp.*, 391 F.3d 1323 (11th Cir. 2004) pertained to civil conspiracy actions brought under federal law where the defendants had committed an underlying criminal violation of federal conspiracy law. Newsome's conspiracy complaint is brought under §§ 1983 and 1985(3), but Newsome has asserted that the Defendants' conspiracy involved alleged transgressions of only Alabama law.

The rationale supporting the application of the criminal conspiracy exception counsels in favor of its extension to this case. First, the Eleventh Circuit has noted that "just as the intracorporate conspiracy doctrine cannot shield a criminal conspiracy from prosecution under the federal criminal code, the doctrine cannot shield the same conspiracy, alleging the same criminal wrongdoing, from civil liability arising under 42 U.S.C. § 1985(2)." *McAndrew*, 206 F.3d at 1034. Up to this point, the court has declined to draw a distinction on the precise criminal provision violated when applying this exception and has generally "recognized that an exception should exist when the conspiracy alleged is criminal in nature." *Id*. The Court of Appeals also acknowledged that "criminal conspiracies pose the precise

27

group danger at which conspiracy liability is aimed." *Id*. (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 603 (5th Cir. 1981)).  In its only subsequent chance to discuss the breadth of this exception, the Eleventh Circuit concisely extended its availability to claims brought under 18 U.S.C. § 1962(d), a provision of the Racketeer Influenced and Corrupt Organization Act, suggesting that the court does not intend to constrict its application. *Kirwin*, 391 F.3d at 1326-27.

Second, the "criminal conspiracy exception to the intracorporate conspiracy doctrine promotes the original purpose of the [Civil Rights Act of 1871] by ensuring that individuals and groups can be prosecuted for their criminal activities regardless of their status of incorporation." *McAndrew*, 206 F.3d at 1041.  While the *McAndrew* court only directly addressed this exception in reference to § 1985(2), it approvingly cited dicta from a Seventh Circuit case that suggested the intracorporate conspiracy doctrine would be inapplicable in all cases where criminal activity was contemplated to violate civil rights.  *Id*. (citing *Dombrowski v. Dowling*, 459 F.2d 190, 196 (1972) ("We do not suggest that an agent's action within the scope of his authority will always avoid a conspiracy finding.  Agents of the Klan certainly could not carry out acts of violence with impunity simply because they were acting under orders from the Grand Dragon.")).

Likewise, this case concerns criminal activity perpetrated to impinge federal constitutional rights.  The Alabama Code makes it a crime for a "person [to] obstruct[] governmental operations . . . by means of intimidation, physical force or interference by any

other independently unlawful act[.]" Ala. Code § 13A-10-2.   The Officer Defendants, charged with enforcing this law, intentionally obstructed and interfered with Newsome's pursuit of her sexual abuse complaint and retaliated against her for so acting.  This type of criminally oppressive conduct is precisely the type of activity at which § 1983 is aimed.  Hence, it should make little difference that the illegal actions violated state rather than federal law.[8]

The Officer Defendants' final argument is that they are entitled to qualified immunity on the conspiracy claims.  The Eleventh Circuit has explicitly ruled that state officials are not protected by qualified immunity against claims brought under § 1985(3).  *Burrell*, 970 F.2d at 794.  The Court of Appeals has not addressed this issue with regard to claims of conspiracy brought under § 1983.  Nevertheless, the *Burrell* opinion and the fact that § 1983 conspiracy claims necessitate an underlying constitutional violation, which requires its own qualified immunity analysis, persuade the Court that another qualified immunity examination is not needed here.  The initial qualified immunity analysis afforded state officials when evaluating the underlying constitutional violation is sufficient to provide these officers with protection from non-meritorious claims.  Indeed, it would be a nearly impossible occasion where certain acts could be found to generate a clearly established constitutional violation,

---

[8] Although Newsome has relied only on state law to substantiate the criminal conspiracy exception, the Court does note that the Defendants' purported actions may also have violated federal law.  Under 18 U.S.C. § 242, it is a crime to "under color of any law . . . willfully subject[] any person in any State . . . to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or the laws of the United States."  In addition, 18 U.S.C. § 241 criminalizes conspiracies that intentionally deprive one of these same rights.

yet a conspiracy to commit such acts would not.  The Court finds another qualified immunity analysis would be duplicative and must resultantly sustain Newsome's claim of conspiracy under § 1983.

    3. *Lee County Defendants*

    In *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978), the Supreme Court held that a municipality or local government is liable under § 1983 for constitutional violations caused by its policies and customs.  "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality. . . .  A custom is a practice that is so settled and permanent that it takes on the force of law."  *Cooper v. Dillon*, 403 F.3d 1208, 1221 (11th Cir. 2005) (quoting *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997)).  Because municipalities cannot be held liable under respondeat superior, there must be a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.  *Snow ex rel. Snow v. City of Citronelle, Alabama*, 420 F.3d 1262, 1271 (11th Cir. 2005) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989)).  Correspondingly, a court must "identify those officials or governmental bodies who speak with final policymaking authority . . . concerning the action alleged to have caused the particular . . . violation at issue" before holding a local government liable under § 1983.  *McMillan*, 520 U.S. at 784-85; *see also Turquitt v. Jefferson County, Alabama*, 137 F.3d 1285, 1287 (11th Cir. 1998).

    In Alabama, counties are charged with the erection and maintenance of county jails

but are not responsible for their daily operation or decisions concerning how the jail should be run. *Marsh*, 268 F.3d at 1027. Alabama sheriffs are the entities charged with the duty of operating the jails and properly spending funds. *Turnquitt*, 137 F.3d at 1290-91. As such, a county may be found to have violated a pretrial detainee's Fourteenth Amendment rights only if "its failure to maintain the Jail constituted deliberate indifference to a substantial risk of serious harm to the [detainee]." *Id*.

In contrast to the qualified immunity context, the Supreme Court has explicitly rejected any heightened pleading standard when suit is brought against a municipality. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993). Hence, a plaintiff's complaint in a suit against a municipality must only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Swann v. So. Health Partners, Inc.*, 388 F.3d 834, 836 (11th Cir. 2004). A municipality's freedom from liability is not the equivalent of an individual officer's immunity from suit. *Leatherman*, 507 U.S. at 167; *see also Owen v. City of Independence*, 445 U.S. 622, 650 (1980) (rejecting the application of qualified immunity to municipalities). Thus, the Supreme Court has not afforded local governments the same protections from discovery that it has given individual officers asserting qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

Against this backdrop, the County Defendants argue that they are entitled to dismissal of Newsome's complaint because it does not adequately state that any policy or custom of

Lee County caused the alleged constitutional violations.  However, Newsome's complaint makes several allegations that go directly to the obligations of the County Defendants with respect to the physical facilities at the jail.  For instance, Newsome alleges that the jail had inadequate mechanisms to monitor and supervise the interaction between corrections officers and female inmates and that these conditions encouraged the type of misbehavior found in this suit.  There are also allegations that the County Defendants understood what was going on at the jail, and though they were not responsible for the policies and procedures in place there, acquiesced or cooperated in the denial of Newsome's rights.[9]  Under the lenient notice pleading standard applicable in this context, these allegations are sufficient to sustain a claim against a 12(b)(6) motion.[10]  *See Marsh*, 268 F.3d at 1027-28.

Because the Court has found many of Newsome's allegations to be unsupported in its analysis of the Officer Defendants' conduct, these same claims must also be dismissed

---

[9] While counties are not responsible for the day to day operation of jails in Alabama, they are required "to remain informed about the conditions within the jails" and have "the authority to inspect the jail without notice to the sheriff."  *Turnquitt*, 137 F.3d at 1290 (citing Ala. Code § 11-14-22). The ability to inspect does not impart any affirmative control over the operation of the jail to the county but does allow the county officials the opportunity to remain apprised of the needs at the jail. *Id*.

[10] In addition, Newsome argues that the County Defendants should be barred from raising this motion, which asserts that Newsome has failed to state a claim, by the doctrine of judicial estoppel.  Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000)). In response to Newsome's request for pretrial discovery, the County Defendants asserted that Newsome had sufficient evidence at her disposal to make out a colorable claim.  As a result, judicial estoppel counsels against allowing the county to rely on these inconsistent positions to prevail at this juncture because it appears Newsome has put forth all the information she has in her possession. *See Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002).

against the County Defendants.  However, Newsome's allegations are sufficient to maintain claims against the county to the extent its failure to maintain the facilities at the Lee County Jail contributed to the constitutional deprivations at issue in this case.  Therefore, the claims under the First and Fourteenth Amendments are sustained against the County Defendants as well.

## B. State Claims

In addition to her claims brought under federal law, Newsome asserts a multitude of claims against the County and Officer Defendants that arise under Alabama law.  These claims too will be analyzed with regard to each set of defendants.

### 1. *Officer Defendants*

Newsome brings a number of claims under Alabama law against the Officer Defendants in their individual and official capacities. In response, the Defendants contend that they are immune from suit brought pursuant to Alabama law under the Alabama Constitution.  The Court agrees.  Pursuant to Article I § 14 of the Alabama Constitution of 1901, "the State of Alabama shall never be made a defendant in any court of law or equity." *Id*.  In accordance with Article I § 14's sovereign immunity provisions, Alabama courts have developed what is now referred to as "State immunity."  Under this doctrine, courts applying Alabama law have routinely held that sheriffs and their deputies are executive officers of the State of Alabama who, with a few exceptions, are entitled to State immunity and thus absolutely immune from suit on state-law claims. *See, e.g., Tinney v. Shores*, 77 F.3d 378,

383 (11th Cir.1996) ("Under Alabama law, sheriffs and deputy sheriffs, in their official

capacities and individually, are absolutely immune from suit when the action is, in effect, one

against the state."); *McMillian v. Johnson,* 101 F.3d 1363, 1364-65 (11th Cir. 1996) (same).[11]

The only exceptions to State immunity for suits brought against a sheriff or deputy are

"actions brought (1) to compel him to perform his duties, (2) to compel him to perform

ministerial acts, (3) to enjoin him from enforcing unconstitutional laws, (4) to enjoin him

from acting in bad faith, fraudulently, beyond his authority, or under mistaken interpretation

---

[11] In surveying Alabama law regarding the outer limits of sovereign immunity for sheriffs, the Eleventh Circuit has observed some confusion in Alabama courts, such that there is "no clear answer" as to whether sovereign immunity protects sheriffs or deputies sued in their individual capacities for malicious or intentional wrongdoing. *See, e.g., McMillian*, 101 F.3d at 1364-65 (collecting Alabama cases and noting inconsistencies). However, this Court need not be troubled by such uncertainty, because the *McMillian* court, applying *Tinney*, adopted an unambiguous interpretation of Alabama law, pursuant to which "a claim against an Alabama sheriff in his individual capacity is barred by the doctrine of sovereign immunity," even if that claim is based on malicious or intentional wrongdoing. *Id*. at 1365 (reversing trial court finding that sheriff was not entitled to immunity for individual capacity claims of malicious prosecution, abuse of process, and outrage); *see also Lancaster,* 116 F.3d at 1430 ("Under Alabama law, a claim against an Alabama sheriff in his individual capacity is barred by the doctrine of sovereign immunity."); *Adams v. Franklin*, 111 F. Supp. 2d 1255, 1272-73 (M.D. Ala. 2000)  (finding that state-law claims seeking monetary damages from a sheriff and deputies in their individual capacities for assault and battery, negligence, intentional infliction of emotional distress, and outrage were barred by the sovereign immunity doctrine pursuant to *Tinney*).  Thus, this Court is subject to a binding interpretation of Alabama law under which sheriffs and their deputies are absolutely immune from state-law claims in their individual and official capacities, even if they are sued for actions that are malicious, intentional, or otherwise outside the scope of their authority.  Despite this Court's obligation under Eleventh Circuit precedent, it does appear that Alabama courts are attempting to clarify this area of the law and to ameliorate the often harsh outcome that results when sheriffs and their deputies are immunized from malicious and intentional conduct.  *See Ex parte Haralson*, 853 So. 2d 928, 933 (Ala. 2003) ("No state officer, such as a deputy sheriff, can avoid liability simply by claiming that his mere status as a State officer cloaks him with the State's constitutional immunity.") (internal quotations omitted).  Nevertheless, these decisions have not contained sufficient clarity to justify this Court's departure from the established position of the Eleventh Circuit.

of the law, or (5) to seek construction of a statute under the Declaratory Judgment Act if he is a necessary party for the construction of the statute." *Parker v. Amerson,* 519 So. 2d 442, 443 (Ala. 1987). These exceptions do not apply where a sheriff is being sued for money damages, rather than for injunctive relief. *See Tinney,* 77 F.3d at 383 ("under Article I, § 14, the only exceptions to a sheriff's immunity from suit are actions brought to enjoin the sheriff's conduct," not actions for damages).

It is clear that Newsome's complaint demands compensatory and punitive damages as well as attorneys' fees and costs. While the complaint also includes a request for a declaratory judgment that the policies and practices complained of are unlawful and in violation of the United States Constitution, this declaratory relief relates to Newsome's claims pursuant to § 1983 and not her state-law claims. Thus, it does not bring the claims against these Defendants outside of the protections of Article I § 14.

Newsome does contend that *Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000) is an intervening case that has changed Alabama law since the Eleventh Circuit's rulings in *Tinney* and *McMillan*. In *Cranman*, the Alabama Supreme Court engaged in an extensive "reexamin[ation] [of] the doctrine of immunity of officers, agents, and employees of the State for torts committed in the course of their performance of their duties." *Id*. at 396. The eventual result of this analysis was a clarification of "State-agent immunity." However, what is unclear from the *Cranman* opinion and its progeny is whether this discussion and adaption of State-agent immunity has any affect on the State immunity afforded sheriffs and their

deputies under the Eleventh Circuit's interpretation of Alabama law. Without a case squarely on point finding that State-agent immunity is applicable to sheriffs and their deputies, this Court is obligated to follow the extant precedent of the Court of Appeals.

Accordingly, the Officer Defendants are entitled to judgment as a matter of law on all of Newsome's claims brought against them pursuant to Alabama law, and their motion to dismiss on those claims is due to be granted.

2. *County Defendants*

Newsome asserts these same state-law claims against the County Defendants. In Alabama, county governments are liable for an "injury or wrong [if it] was done or suffered through the neglect, carelessness or unskillfulness of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his or her duty." Ala. Code § 11-47-190. Although Alabama courts have occasionally found municipalities liable for intentional acts that resulted from a material degree of "unskillfulness," *see City of Birmingham v. Thompson*, 404 So. 2d 589, 591 (Ala. 1981), the general rule is that local governments are not liable for the intentional torts of their agents. *Todd v. Kelley*, 783 So. 2d 31, 41-42 (Ala. Civ. App. 2000) (citing *Couch v. City of Sheffield*, 708 So. 2d 144, 154 (Ala. 1998)).

Moreover, Alabama sheriffs and their deputies are not "considered [employees] of the county for the purpose of imposing liability on the county." *King v. Colbert County*, 620 So. 2d 623, 625-26 (Ala. 1993); *see also Coleman v. City of Dothan*, 598 So. 2d 873, 874 (Ala.

36

1992); *Carr*, 916 F.2d at 1526.  As a result, counties cannot be held vicariously liable for the actions or omissions of the sheriff or his deputies in the operation of a county jail.  *See King*, 620 So. 2d at 625; *Vinson v. Clarke County, Alabama*, 10 F. Supp. 2d 1282, 1303 (S.D. Ala. 1998) ("[I]t is not possible for an Alabama county to act negligently or wantonly in regard to the oversight of inmates in the jail.").  Any claim against the county must be based on a failure on the part of county officials to provide an adequate physical facility.

Newsome has not alleged that any of the intentional torts perpetrated against her were the result of any "neglect, carelessness, or unskillfulness" of the County Defendants. Additionally, the county has no responsibility in regard to the training or hiring of the members of the sheriff's department.  Consequently, Newsome's intentional tort, negligence per se, and negligent supervision, retention, and training claims must be dismissed, and the Court will proceed to analyze only the claim that avers some form of neglect on the part of the county with regard to the maintenance and sufficiency of the facilities.

While Alabama counties have no responsibility over the operation of county jails, they do have "an affirmative duty . . . to maintain the jail and keep it in a state of repair."  *King*, 620 So. 2d at 625.  This duty is "intended to require the county commission to keep a jail and all equipment therein in a state of repair and to preserve it from failure or decline."  *Keeton v. Fayette County*, 558 So. 2d 884, 886 (Ala. 1989).  Each county has "a legal duty to keep the jail in a reasonably safe state of repair" but will not be held liable unless a breach of that duty is the proximate cause of the plaintiff's injury.  *King,* 620 So. 2d at 625-26.

On several occasions in her complaint, Newsome asserts that the facilities at the Lee County Jail contributed to the circumstances that led to her injuries. For instance, she contends that the county failed to "install adequate safeguards in the physical plant of the jail to monitor and supervise corrections officers while they interacted with female inmates." At this stage, these allegations are sufficient to maintain a negligence cause of action against Lee County. Thus, Newsome's negligence claim against the County Defendants must be sustained.

## CONCLUSION

For the reasons stated above, it is hereby ORDERED that the Defendants' motions to dismiss (Doc. #7 & #12) are GRANTED in part and DENIED in part. In summary, the Plaintiff's claims under the First Amendment shall continue against Major Torbert, Officers Ausby, Jackson, Seabrook, Tabb, and Wiltsie, and Lee County; the Plaintiff's claims under the Fourteenth Amendment shall continue against Officer Tabb and Lee County; the Plaintiff's claims of conspiracy under 42 U.S.C. § 1983 shall continue against Major Torbert and Officers Ausby, Jackson, Seabrook, Tabb, and Wiltsie; and the Plaintiff's claim of negligence against Lee County shall continue. All other claims are DISMISSED.

It is further ORDERED that the County Defendants' Motion to Strike (Doc. #7) is GRANTED. As a result, the Lee County Commission and the Lee County Commissioners are DISMISSED as parties to this case. Sheriff Jay Jones is also DISMISSED as a party to this case.

Finally, the remaining Defendants shall file their answers to the Plaintiff's complaint in accordance with the Federal Rules of Civil Procedure.

Done this the 15th day of May, 2006.

          /s/ Mark E. Fuller
          CHIEF UNITED STATES DISTRICT JUDGE